The United States Court of Appeals for the Federal Circuit is now open to end in session. God save the United States and this honorable court. Good morning. There are four cases before the court this morning, only two of which are being argued. The first argued case is case number 20-2043, CosmoKey Solutions v. Duo Security. Are you prepared to begin, Mr. Weingartner? Yes, Your Honor. You may. Thank you, Your Honor. May it please the court, Scott Weingartner of White & Case for Appellant, CosmoKey Solutions. The claims of the 903 patent in this case are directed to a specific method for use of a dual-channel timing architecture and auto-deactivate function that improves computing technology and is also necessarily rooted in that technology. The claims are not a mere abstraction but achieve, if you will, a particular chemistry, a useful result that has not previously been known in the industry, let alone before the introduction of telecommunications and computing technology. Counselor, this is Judge Ray. I have a preliminary question and I'm kind of confused on this and maybe I shouldn't be, but what is it that is being appealed here? A refusal to initiate or is it a final written decision? Thank you, Judge Ray. It's a final decision under Rule 12, dismissing based upon 35 U.S.C. Section 101. Okay. So this goes to, I think, the question Judge Rayna just asked, which is that this is obviously from the district court but you keep citing to the PTAB. Are you saying that somehow the PTAB rulings are binding on the district court or binding on this court? Not at all, Your Honor, and I'm glad we have an opportunity to address that. We think it's an interesting situation because the PTAB results, we do not see them as in any way being binding or replacing a 103 analysis. To the contrary, to arrive at the 103 results that the PTAB got to after a detailed analysis required factual determinations that overlap significantly with determinations that the court made on the same prior art. And so it's our view that that proceeding, which happened in parallel at the behest of the appellee's parent company, are signaled here and point out the problems with how the district court went about arriving at its conclusion. So it's not that it governs, it's that it sheds light on the underlying factual issues that are on point here. Well, Mr. Weinberg. Oh, go ahead. I was just going to say, I'm still a little confused by your answer to Judge O'Malley's question. What specifically are you relying on those PTAB determinations for as regards 101? Yes, and thank you, Your Honor. We raised the PTAB point because with respect to 101, there were a couple of points that the district court reached regarding what was conventional technology, whether the actual technological improvements were being made. And for one example, the court considered a particular prior art reference and concluded that there was the same architecture as was being claimed, which is not true, and the PTAB very clearly pointed out that it wasn't. So we view that separate proceeding as a source of factual evidence about what the prior art showed, which was at odds with the conclusion that the district court reached. So is your view that if something wouldn't be obvious to one of ordinary skill in the art, that it necessarily couldn't be conventional or routine or well-known? I think there's a significant connection between the two of them, Your Honor. I think that I understand the point that 101 and 102 and 103 are different and that it is possible to have a claim to something that appears novel but still ineligible because it doesn't claim the subject matter properly and it claims an abstraction. I see that. Well, what's your legal authority for that argument or that position? Well, I think, Your Honor, that's probably the closest case is Internet Patents v. Active Network 790 F3rd 1343. And there's also some district court cases, Your Honor. And the Internet Patents case at one point says courts have found guidance in deciding whether the allegedly abstract idea or other excluded category is indeed known, conventional, and routine or contains an inventive concept by drawing on rules of patentability. But again, Your Honor... That says nothing about reaching back into 103, into a 103 finding. Right. And, Your Honor, what we... And I appreciate Your Honor's question. Again, we're not looking at the 103 finding and saying that that is relevant to 101. We're looking at the underlying conclusions on the underlying facts that support 103 that we believe are in common with 101. Okay. On that point again, I know you need to get into other things, but didn't the district court actually rely on what the patent itself said about that prior art, the Williams reference? I don't believe it relied on what the patent said, Your Honor. I believe it looked at the Williams reference and the representations that were made about it by the defendant below. And it didn't conduct... And I understand why the district court wouldn't necessarily conduct a detailed analysis because it wasn't a 103. But it looked at everything in a relatively oversimplified way. Even the figures in Williams very clearly show a single channel. And the dual channel is distinct, wasn't in the prior art. And we believe that the Williams reliance was a linchpin for one of the district court's conclusions. Okay. Is the dual channel the focus of the claimed advance? Judge Reina, it's actually one of more than one. There's a dual channel timing mechanism and also a separate functionality, which is an authentication function that is automatically deactivated that's on the user side. So it's both individually, we believe, bring the claims out of a 101 finding. But certainly the combination in addition does as well. On the dual channel... Sorry. I'll go first on this one and then I'll give it to you, Judge Stoll, in a second. But on the dual channel timing, is it the dual channel aspect that you're claiming is new and unusual? Or is it the fact that you're saying that the timing is virtually simultaneous? Thank you, Judge O'Malley. It's the dual channel timing that has a pathway, for example, to a terminal, to a service provider, and then the separate channel to a phone, which is a trusted link, which wasn't in the prior art, to do a timing as between the two of them. But you don't really claim a specific timeframe in the claims themselves, do you? I think, Your Honor, with respect that we do, Judge O'Malley, this is essentially in the third element we claim. And we believe this really distinguishes over the Prism Technologies case. There's a specific criterion. It's a criterion for deciding about authentication, where there's a check as to whether a, quote, and a response from the second channel. And we recognize this is tricky because, as a patent practitioner, one has to come up with a term that captures the notion of a relation. It doesn't specify exactly what that timing is that's open for the service provider to conclude what would be most secure. But it is in the third claim element. It could be two hours. This is Judge Stoll. That could be two hours, right? I mean, your specification says the predetermined time relation could be simultaneous or it could be some other time. And predetermined time relation is pretty broad, right? I mean, I understand what you're saying about being a claim drafter and wanting to make sure that you keep it broad so you don't have people designing around based on certain amounts of time. But, you know, this claim language is pretty broad. It could be two hours, right? Well, Judge Stoll, it certainly would be up to the system designer for the context that they're in. The problem with claiming it as a specific time, there would potentially be if there were some other way of putting it, it might run into indefiniteness problems. But I think the breadth issue is really addressed by the fact that it's in the context of the dual channel. So I know that the appellee has been arguing that this is a claim to using timing and authentication. That's definitely not what this claim is directed to. It's the combination of the dual channel with the timing mechanism. Can I ask you about the last three limitations? That's where you've got ensuring the authentication function is normally inactive and then ensuring that it's activated by the user, that the response occurs, and then thereafter ensuring the authentication function is deactivated. Is there something in the specification to support your position that these claim limitations are important to the invention? Yes, Your Honor. I don't know that I have it at my fingertips, but it's really central. This is really, I think, that in combination with the other features are core to the invention. And the usefulness was actually, I think, acknowledged during the PTAP proceedings by Cisco who pointed to them in its attempts to show that the references could be combined. It pointed to the technically useful results. I often consult the specification when I'm trying to determine, you know, thinking about what a claim is directed to or whether something is an inventive concept. So if there's something in that specification, maybe you'll want to identify for us. Yes, Your Honor. I could perhaps direct the court to the bottom of column one, line 63 on, where it says, the complexity of the authentication function can be reduced significantly. Hopefully I'm looking at the right passage here. Which column are you in? I'm sorry. Thank you, Your Honor. It's at the bottom of column one. Okay. And then it says, in the extreme, all that has to be required from the authentication function is to permit. I apologize for speaking so quickly. Even, I guess, the paragraph prior to that, and I apologize. I shouldn't have my reading glasses on. The prior paragraph, which would begin around line 57 or 58, states that the authentication method, according to the invention, is characterized, pardon me, the patent jargon, in that the authentication function is normally inactive and is activated by the user only preliminarily for the transaction. And the response from the second communication channel includes the information that the authentication function is active and the authentication function is automatically deactivated. And that reduces, next line, the complexity significantly. If I had reversed those earlier, I apologize. I think one of the problems here is that this is an oddly written patent. I mean, I'm used to seeing a description of the prior art and a description of how these are advantages over the prior art. So you call out these, and it actually goes into column two as well. But are you saying these were not known in the prior art? Yes, Your Honor. And I believe this is a convention case coming out of Germany, which I had no role in preparing. And I understand the court's observation that— I wasn't criticizing you. I was just saying— No, thank you, Your Honor. But I appreciate the point about the format of the application that led to the patent being a bit unconventional. But, yes, it's our position, and it's the position of the patent, that that feature was new as of the filing date. And I know that 101 doesn't always focus specifically on going back to the filing date, but that was new at the time. And we believe that that was admitted by Duo as well. We don't think that it's controversial. And perhaps the reference to the PTAP proceedings we pointed to, again, not because 103 is directly controlling in any way, it isn't, but simply that it leaves a record simultaneously, which the court did not have the benefit of until pretty late, in order to be able to see the differences between the positions that were before the PTAP and before His Honor below. Mr. Can you clarify for me, Counselor, are the claims directed to resolution of a problem in Internet technology, or is this improvement of computer functionality? Thank you, Judge Reyna. I think I see them as very closely related, that computer and network technology are not exactly synonymous, but they exist side by side nowadays. There was a time when I was younger when the computers were all detached from one another, but now they're all networked. So I think that we're not saying that the innovations have to do with the underlying computer hardware, but it has to do instead with the architecture. And in a way, almost all computer inventions, I would contend, really involve issues of arrangement of data paths or links and nodes and relative timing. I think the bulk of innovations in computing technology fall into that category, and I think this invention is one of those. I didn't hear a buzzer, but it looks like you're past your 10 minutes. Did I miss something, Katie? Yeah, there was a buzzer. Oh, okay. And I apologize, because I was just showing that we're at 15 minutes, and I apologize to the Court that I did not hear the buzzer. All right. I'll restore three minutes for rebuttal, and, Mr. Lindley, I'm sure we'll probably go over on yours as well. I'm sorry, I'll have to keep watching the clock a little better, or start hearing better. In any event, let's hear from Mr. Lindley. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. Let me begin by just pointing out that this case is like dozens of others this Court has seen in the last decade. The patentee claims to have come up with an idea and then patented the idea itself, implemented using any standard technology. It's well established in the case law that that isn't patentable subject matter, and, indeed, this Court has not only regularly rejected patent claims of this form, it has rejected, as unpatentable under Alice, other efforts to claim the very idea Cosmo Key thinks it came up with. Mr. Lindley, if we were to break down a little bit what you just said, let me ask you this question now. Your opponent says that these are some of the things that did not exist in the prior art, and that's the dual channels, the predetermined timing, the limitation of predetermined timing. Just on those two alone, was this in the prior art or not? Well, it was, Your Honor, although I think you do not need to reach that question in order to resolve this case because the idea itself is abstract. It is worth noting that the petitioner, the appellant here, is all over the map in what they claim the invention actually is. In the district court, the claim was that it was a two-factor method of authentication where you could just turn on the second device. They, on appeal, changed their argument to focus on the timing and predetermined time relation. That's something they paid no attention to in the district court. In the reply brief, they changed their argument again and seemed to focus on this auto-deactivation feature or on the idea of an ordered combination. All of those arguments are new. This court has long established that the two-factor authentication is itself an abstract concept, and it did so in the 10th Street opinion. Counselor, I would agree that maybe authentication is an abstract concept, and I kind of would start there. But then when you start getting into these further limitations here, it seems to me that there's a hierarchy of rules that are being established to reach now a new type of authentication. What's your response to that? Well, Your Honor, I think that's not correct. I mean, even apart from the fact that I think they have waived the argument that there's a sort of structured hierarchy here by not arguing it in the appellate brief, the ordering and structure of the concept appears to be simply turn the device on, use it, and turn it off. And I think that's hardly something you can claim to be an inventive concept. Now, the claim does say that the device will auto-deactivate, but I think it's also hard to claim that that is an inventive concept. My toaster turns itself off. My phone and my computer all turn themselves off after a period of inactivity. Is that really the invention here? Is it the invention that you want to use your toaster, but before you can use it, you have to have this dual authentication, and it has to happen within a certain amount of time, a predetermined amount of time? Well, Your Honor, I think the answer to that is no, because at least it's not this. This Court has previously held that two-factor authentication, the idea of using the second device, is itself an abstract concept. In two cases that are unpublished, Consumer 2.0 and Ashgari-Kamrani, this Court extended that to two-factor authentication that occurred, quote, during a specified period of time. And it's worth noting that those cases involved technology that actually was a lot more clearly specified than the technology here. The only thing that they point to in their appellate brief is this idea of a predetermined time relation, but there's nothing in the predetermined time relation that suggests a particular time. And more importantly, I think that is itself an abstract idea. Even if one were to say this is a novel move, which I don't think it is, the idea of using two devices, turning one on within a predetermined time, is an abstract idea. And this Court has made abundantly clear... Do you think that a POSO reading the patent would understand that the amount of predetermined time is minimal as opposed to, you know, two hours or two days? Your Honor, I think it's... I mean, if you want to use your POSO, you want to use it now. You don't want to use it two hours from now, right? I think it is fair to say that that is perhaps something that the patentee intended, but it is not something that is captured in the claims. The claims do not specify something that's near simultaneous. They specify only a general term, predetermined time relation. But again, I think that even if you were to try to read that in as a limitation, and that's something this Court has repeatedly said you cannot do, it would be irrelevant because the point of doing so is itself an abstract idea. And this Court has repeatedly made clear that you can't use the abstract idea itself at step two to say this is a novel concept. Go ahead, Judge Stoll. Thank you. I just wanted to ask you about those last three steps of the claim. They have me... I think they make the case a little bit more difficult. Those last three steps, talking about, you know, ensuring that something's off and then that it's normally inactive and then activating it preliminarily and then deactivating it after it's all done, those steps seem to be discussed in the specification at columns one and two. And they say that those steps make it so that the device can be quite simple. But also it says in column two, around line 15 or so, that because the authentication functions are not there, you know, having these steps causes it to be provided an authentication that would be more successful. It talks about it being successful only under the unlikely event that the true user happens to activate that function. Why is that not an inventive concept then as recited in the claim? Well, Your Honor, it's worth noting here that the specification gives you no detail itself as to how this is to be done. I think this is the idea itself. The idea is we have two-factor authentication using a device that you turn on and it signals that I am on. And the patent itself says, well, it could be a short period of time, but it doesn't have to be. The patent itself says the user is the person who turns this thing on. And the concept of automated deactivation, which is something that would be done automatically, can be done with something as simple as an on-off switch. I understand your answer. It's a good one. The problem I'm having is that, you know, the claim is directed to an authentication technique, right? And then it has specific steps for the authentication, which are kind of specific. I mean, you know, it's more than, say, a prism. And so I can understand that you could break down each step, as you've done, and say that each step in and of itself is fairly simple and doesn't talk about specifically how it's done. But at what level are we supposed to analyze this claim? Am I supposed to look at each and every step and see whether each and every step is just something basic? Or should I look at the claim as a whole and see if it's providing a specific authentication technique? Well, Your Honor, I think you can do both. But I would suggest that neither each individual step nor the combination is itself anything more than an abstract idea and is certainly not an inventive concept added to that abstract idea. So when you look at it. What would be added to this claim to make it an inventive concept or make it directed to something that is eligible because it's a technical solution to a technical problem? What kind of details do you think would have to be? I'm just trying to give you kind of a hypothetical here because, you know, we have to draw these lines on when something is eligible and when it's not. And sometimes it's rather difficult. So I'd like to have your thoughts on that. What kind of things would have to be added? I understand that, Your Honor. So I think the answer is you could imagine a technology that was itself somehow integrally connected so that it received and generated signals of a particular type that turned itself on, for instance, in the proximity of a recognized device. You could imagine things that actually changed the way computers operated here. What's notable here is that there's none of that in the claim. There's none of that in the specification. And, indeed, the specification is quite clear that we don't even need computers at all to do this. The, quote, terminal can be a banking machine or cashier or any other device. The mobile device is a particular advantage of the invention that the mobile device does not have to have any specific hardware. It can be low complexity. Counselor, I kind of shared what Judge Stoll was asking, and I have those concerns. I'll be real simple here. Explain to me why, when you look at the different steps in Claim 1, why is that not what happened in Macro? Oh, Your Honor, I think the answer is Macro was very clearly directed to a change in the way the computer actually worked. We changed there. The claim was directed to Macro. Yes, but how did that change occur? It occurred through the recognition and a combination of specific rules, right? It did, Your Honor, but those specific rules were implemented in software in the computer in a way that changed the operation of that computer. Here, we not only have no such similarity, we don't even have software. The patent is clear that the device can be as much as... But here it turns on the computer. It gives you access to use it. Well, no, Your Honor. I think that, I mean, that may be how we use it, but the mobile device can be a low-complexity device. The patents claim, Column 2, 54 to 56, says, it is not even necessary there is any actual communication between the authentication device and the mobile device. Having a wireless link is, quote, preferable but optional. This is not something that is limited to any particular technology, much less a way that changes that particular technology. The idea is, quite simply, turn something on and then detect that there is something turned on. That is an abstract idea. The invention isn't directed to authentication for use of the second device. It's for authentication of the transaction, and the device is just another one. The cell phone is just another step in getting to the authentication of the transaction. That's correct, Your Honor, but it is the only thing that Cosmokey argues is potentially something they have invented. This Court has long recognized in multiple cases that two-factor authentication itself is an abstract concept, that the idea of authentication at the terminal, but also authentication at the terminal using a second device. It seems to me that they're not arguing that they invented authentication. They're arguing that they invented a new way of authentication. Your Honor, they are, in fact, on appeal arguing that. Below, they did try to argue that they claim two-factor authentication. They are arguing this predetermined time relation, but that is not, I think, inventive. More to the point, I think that is itself an abstract idea. If it's an abstract idea, even if it is a novel abstract idea, that shouldn't matter. That maybe allows me to say just a bit about the PTAB, with the Court's permission. Yes, Mr. Lemick, I wanted to actually ask you, do you see, putting aside whether we're bound by anything the PTAB would say, do you see a relationship at all between obviousness and routine and conventional? Your Honor, I think that there are overlaps, as the Court said in Mayo, between the inquiry, but they are definitely not the same inquiry. What this Court has repeatedly said is that the novelty of the process is of no relevance in determining patentable subject matter. That's Intellectual Ventures v. Symantec. But it says the same thing in SAP v. Investpick. It's not enough for subject matter eligibility that claim techniques be novel and non-obvious. We may assume that technologies claimed are groundbreaking, innovative, or even brilliant. That is not enough for eligibility. I think there are sometimes questions that are similar here, but even apart from the fact that this is a denial of institution and is not appealable, is not binding, it's not the same question. What the PTAB was looking at was whether it would have been obvious to combine two specific pieces of prior art, and it found that certain references taught away from a claimed combination. That's irrelevant, I think, to the question. At step one, is there an abstract idea? But I also think it's irrelevant in this case at step two because the only thing that the patentee points to to try to find an inventive concept is itself an abstract idea, and you can't do that. That's bootstrapping, and this Court was quite clear in trading technologies that the abstract idea cannot supply the inventive concept no matter how groundbreaking the advance. But didn't the District Court look to the same references that the PTAB did? Your Honor, the District Court looked at one of the references, but again, it is worth noting that the argument with respect to step two is directed to this idea that they had created an inventive concept by implementing turning the device on, and that's something that the previous cases have simply held isn't patentable. It is an abstract idea. It is not an inventive concept implementing that idea. Are you saying that there's a specific case that addresses the concept of turning something on? Well, yes, Your Honor. In fact, in the ChargePoint case, both the idea of automatic activation and deactivation was held to be part of the inventive concept. Again, I will note that the argument with respect to the automatic deactivation feature is a new argument and could be rejected for that reason. But even if it's not, the only thing the patent claim element says is ensuring the authentication function is automatically deactivated. There's no specific technology claimed at all. The patent emphasizes a vast range of devices could be used, and this court in ChargePoint held that that wasn't sufficient to avoid abstraction. Even in that case, there really was real specific new technology, and that was insufficient. My time is up, Your Honor, but I'm happy to answer further questions. Anybody have anything else? Okay, then we'll hear from Mr. Weingartner again. Thank you, Your Honor. The appellee's argument depends, as it always has, on a divide-and-conquer strategy that's not permitted under the law. It's not okay to take all the elements, dissect them, look at them in isolation, and dismiss them as abstract. That's what's being done here. And then we're hearing, well, this is just an abstraction without any real identification of why that would be. I think Judge Stoll raised the question about needing to look at the elements as a whole, and I think that applies in this context. And there's not just an idea. There's a specific method with a specific criterion, a specific structure. And that network structure is an issue. Can I ask, also, Mr. Weingartner? Yes, Your Honor. It seems to me, though, that each step of the authentication seems to flow from the prior one, like the on-off switch. If the switch is off, then the only option is to have it turn on, and once it's on, the only option is to turn it off. So even though each step might seem pretty exact, can't we just condense it down to switching the authentication function on and off? No. No, Your Honor. Again, if we were to do that as the appellant would like us to do, we'd be tossing out the network architecture, the network timing architecture, which is not in the prior art. I understood Mr. Lemme to say that it was in the prior art, but it's obviously not. And Cisco used three-way, four-way, and five-way combinations in an attempt to show that and failed, and, again, I'm not equating the 103 analysis, but simply rebutting the point he made. It's a non-trivial thing, and it's not required, I don't think, as appellant argued, that some underlying piece of hardware needs to be innovated in order for a network claim to be patent eligible. The architecture is a legitimate subject. Bell Labs invented a lot of that, a lot of that's patented, because the network itself is susceptible to being improved, and that's what has happened here. At one point, Mr. – and I'm digressing a little bit, but Mr. Lemme talked about proximity being something that would render something not abstract, but that's actually in the patent and is in Claim 6, using location-based services. So I didn't want to let that go unaddressed. The concern that I have on the patent is that there's no – it seems to me that the time limitation is And there's no – if you can have the two days to get the device turned on, or if it happens within a couple of minutes, if this patent is found to be eligible, aren't we preempting in the future the use of all authentication methods that are based on a predetermined time limitation? No, Judge Reina, and I appreciate the question, and I think the reason that it would not be preemptive is because it's limited to the specific dual-channel architecture and that specific combination. I don't see this – and earlier when Council was saying it's claiming an idea, it's hard to know even what idea is being pointed to when that question is being raised. It's a very specific solution. If one wants to do authentication, they can use many others, including the ones that are in the prior art. It is, again, that combination, and I urge the Court to resist dividing the invention into different components and ascribing the inventive concept to any specific one of them, because that, I think, runs into this problem of making it look abstract and is really a coherent set of features. Okay, Council, I think your time is up. I appreciate it. This case will be submitted. Thank you, Your Honor.